# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AYMAN FAREH SOLIMAN,** an individual who resides at 3770 Green Hill Ave, Cincinnati, OH 45220, <br><br>*Plaintiff,*<br><br>v.<br><br>**ALEJANDRO MAYORKAS,** in his official capacity as Secretary of the Department of Homeland Security, 245 Murray Ln SW, Washington, DC 20528;<br><br>**MERRICK GARLAND**, in his official capacity as Attorney General of the United States, 950 Pennsylvania Ave NW, Washington, DC 20530;<br><br>**CHRISTOPHER WRAY**, in his official capacity as Director of the Federal Bureau of Investigation, 935 Pennsylvania Ave NW, Washington, DC 20535;<br><br>**CHARLES KABLE IV**, in his official capacity as Director of the Terrorist Screening Center, 601 4th St. NW, Washington, DC 20535<br><br>*Defendants.* | **Civil Action No.:**   1:22-cv-79 <br><br><br>**PLAINTIFF'S COMPLAINT FOR DECLARATORY, INJUNCTIVE AND OTHER RELIEF** |

## PLAINTIFF'S COMPLAINT FOR
## DECLARATORY, INJUNCTIVE AND OTHER RELIEF

Now comes Plaintiff Ayman Fareh Soliman, by and through undersigned counsel, and files this Complaint for declaratory, injunctive and other relief against Defendants, and shows the following:

## I.   INTRODUCTION

Plaintiff Ayman Fareh Soliman ("Plaintiff" or "Mr. Soliman") has no criminal record, history of any mental illness, or other disqualifying factors. An Islamic Imam, he happily accepted the offer he received from the Oregon Department of Corrections to serve as a Muslim Chaplain to inmates. However, despite multiple assurances his background check revealed no issues, the Department of Corrections could not fully clear him to begin his position because of an unresolved "FBI flag" on his background check. That, combined with the numerous "SSSS" designations on his boarding passes when he travels, give him reason to believe he is included in the Terrorist Screening Database. Defendants improperly disclosed stigmatizing statements about him in violation of the Privacy Act of 1974. Plaintiff brings this action challenging the constitutionality of Defendants' policies and actions, as well as the lack of procedural due process afforded by these polices. In support of his Complaint, Plaintiff states the following:

## II.   PARTIES

1. Ayman Fareh Soliman, of Egyptian national origin, received asylum status in June 2018 and has lived in the United States since. He accepted an offer of employment from the Oregon Department of Corrections to work as a Muslim Chaplain, but could not begin the position due to an unresolved "FBI flag" preventing his clearance.

2. Defendant Alejandro Mayorkas is the Secretary for the Department of Homeland Security ("DHS"), and is sued in his official capacity.

3. Defendant Merrick Garland is the Attorney General of the United States. The Attorney General ("AG") leads the Department of Justice ("DOJ") which oversees the Federal Bureau of Investigation ("FBI"). Defendant Garland is sued in his official capacity.

4. Defendant Christopher Wray is the Director of the Federal Bureau of Investigation. The FBI has intelligence and law enforcement responsibilities, and administers the Terrorist Screening Center ("TSC"). Defendant Wray is sued in his official capacity.

5. Defendant Charles Kable IV is the Director of the TSC. The TSC is a multi-center agency, administered by the FBI, that is responsible for the management and operation of the Terrorist Screening Database ("TSDB"). The TSDB compiles the nation's watchlists, including the No Fly List. Defendant Kable is sued in his official capacity.

### III.   JURISDICTION

6. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) as this action arises, in part, under the Fifth Amendment to the United States Constitution. Jurisdiction is also conferred pursuant to 5 U.S.C. § 555(b) and § 702 (Administrative Procedure Act). The relief sought is appropriate under 28 U.S.C. § 2201(a) and 28 U.S.C. § 2202 (the Declaratory Judgment Act) which allows parties to bring suit in federal court to obtain declaratory relief that is otherwise not available.

### IV.   VENUE

7. Venue is appropriate in this Court under 28 U.S.C. § 1391(e)(1), which states in relevant part that "a civil action in which a defendant is an officer or employee of the United States or agency thereof acting in his official capacity . . . may be . . . brought in any judicial district in which [] a defendant in the action resides."

### V.   STATEMENT OF FACTS

8. Mr. Soliman is a practicing Muslim of Egyptian national origin, with no criminal record or history of mental illness.

9. Mr. Soliman currently possesses asylum status and has a pending Adjustment of Status application. His family is in Egypt and is awaiting approval to immigrate to America.

10. Mr. Soliman accepted a position with the Oregon Department of Corrections ("ODOC") to serve as a Muslim Chaplain.

11. Daryl Borello, ODOC Administrator for the Religious Services Unit, described Mr. Soliman as highly qualified based on his education and work history, noting that Mr. Soliman "rose to the top of the candidate pool."

12. On February 4, 2021, ODOC initiated a Law Enforcement Data System ("LEDS") check on Mr. Soliman; successful clearance of the check is a prerequisite for beginning employment. The check came back with an "FBI flag" and provided a phone number to call.

13. Stuart Young, Religious Services Manager, contacted the FBI but received no resolution at that time.

14. As a result, ODOC sent Mr. Soliman a rescission of the employment offer which also informed him that he had not cleared the background check.

15. Mr. Soliman submitted fingerprints to the Oregon State Police to further ascertain the reason he did not clear the background check, making clear that he was wrongly placed on an FBI list. On February 16, 2021, Oregon State Police reported to Mr. Young that Mr. Soliman was not a match with the FBI record flagged on Mr. Soliman's Law Enforcement Data System ("LEDS") record.

16. ODOC then sent Mr. Soliman a second employment offer. Mr. Soliman accepted the offer and moved to Umatilla, Oregon, where the Two Rivers Correctional Institution to which he was assigned is located.

17. On April 1, 2021, as part of the onboarding process, the prison facility took Mr. Soliman's fingerprints and sent them to the Oregon State Police for processing, to obtain the Criminal Justice Information Services ("CJIS") clearance required for him to enter the facility.

18. On April 7, 2021, the prison facility received a response from the Oregon State Police denying Mr. Soliman clearance based on the FBI flag, which remained unresolved.

19. Mr. Soliman began teleworking for ODOC on April 13, as a temporary solution while ODOC and Mr. Soliman each attempted to resolve the background check issue.

20. Mr. Soliman initiated a DHS TRIP Redress action to determine if he was placed on the No Fly List or any Watchlist.

21. DHS communicated its Final Determination on September 24, 2021, providing no specific information. The response Mr. Soliman received is consistent with those received by many who are not on the No Fly List, but are in the TSDB.

22. Upon information and belief, Plaintiff reasonably believes himself to be on a government Watchlist or named in the TSDB.

23. On September 23, 2021, ODOC terminated Mr. Soliman so that it could fill the position with someone who could enter the facility, despite continuing in its desire to employ Mr. Soliman.

24. ODOC recommended that Mr. Soliman re-apply should he ever clear the FBI flag on his background check. Mr. Soliman intends to re-apply for a Chaplain position with ODOC if the flag is removed.

25. Mr. Soliman exhausted all required administrative prerequisites, but remains no closer to resolving the issue or even having clarity about any reasons for his likely inclusion in the TSDB.

## VI.   CAUSES OF ACTION

**Count I: Violation of Plaintiff's Fifth Amendment Right to Procedural Due Process, Against All Defendants**

26. Plaintiff reincorporates by reference all numbered paragraphs above.

27. When government decisions deprive citizens of liberty or protected interests within the meaning of the Fifth or Fourteenth Amendments, procedural due process dictates that the government must follow certain constraints. Specifically, the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. IV.

28. The Due Process clause protects against deprivations of rights, including the right to practice a chosen profession, without a meaningful opportunity to be heard.

29. Defendants Mayorkas, Wray, and Kable violated the Due Process clause by depriving Mr. Soliman of his Fifth Amendment property interest in his chosen profession.

30. Plaintiff has a reasonable fear of the same harm arising in the future, as he has yet to determine what caused the "FBI flag" on his background check and has not had any meaningful opportunity to refute it. Mr. Soliman desires to work as a Chaplain with ODOC, or another state or federal prison system. Presumably, any employment with any state's Department of Corrections will require Mr. Soliman to successfully pass a background check, which he cannot do while the FBI flag remains on his profile.

31. Further, Mr. Soliman has filed an Adjustment of Status which has been pending for twenty-eight months. The stated average processing time is between nine and twenty

months.[1] Mr. Soliman reasonably believes that inclusion on the Watchlist has impeded processing of his application.

32. Defendants' apparent placement of Mr. Soliman in the TSDB caused direct economic and other harms to him.

33. Though the core right of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner," Mr. Soliman has not been afforded that right.[2] Where the government deprives individuals of a property interest, the government must also inform the individual of its reason for the denial.[3] The right to know the factual basis for a government action and the opportunity to rebut the evidence supporting that action are essential components of due process.[4]

34. Here, Mr. Soliman exhausted his only avenue of administrative remedy—DHS TRIP—and is no better off than when he started. The existing procedures provide him with no means to challenge his inclusion or even determine what triggered his inclusion.

35. Plaintiff is entitled to an adequate legal mechanism that not only provides him notice, but also gives him a chance to contest the deprivation of his constitutionally protected liberty interest in his chosen profession.

**Count II: Violations of Plaintiff's Substantive Due Process Rights, Against All Defendants**

36. Plaintiff incorporates by reference all numbered paragraphs above.

37. The Fifth Amendment's substantive due process component bars certain arbitrary and wrongful government actions, regardless of the fairness or equity of implementation.

---

[1] *See, e.g., Check Case Processing Times*, USCIS, https://egov.uscis.gov/processing-times/ (last visited Dec. 1, 2021); *Historical National Median Processing Times (in Months) for All USCIS Offices for Select Forms By Fiscal Year*, USCIS, https://egov.uscis.gov/processing-times/historic-pt (last visited Dec. 1, 2021).
[2] *Kaley v. United States,* 571 U.S. 320, 357 (2014) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)).
[3] *N.B. v. District of Columbia*, 244 F. Supp. 3d 176, 181 (D.D.C. 2017).
[4] *Rails Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 318 (D.C. Cir. 2014).

38. Substantive due process requires heightened protection against government interference, and forbids government action which infringes upon certain fundamental liberty interests, unless the infringement is narrowly tailored to serve a compelling government interest.[5]

39. The right to practice a chosen profession is a fundamental liberty interest.

40. Merely stating that Mr. Soliman has an FBI flag associated with his profile—and thereby suggesting that he is a threat or otherwise has committed some wrong—without articulating why or providing more than a mere few words is a violation of Mr. Soliman's substantive due process rights.

41. The actions outlined above are not narrowly tailored as the law requires. Defendants failed to provide Mr. Soliman with explanation of why there is an FBI flag on his profile and have not allowed for him to meaningfully challenge his inclusion on the Watchlist.

**Count III: Violation of Equal Protection Under the Fifth Amendment to the U.S. Constitution Based on Mr. Soliman's Religion Against Defendants Mayorkas, Wray, and Kable**

42. Plaintiff incorporates by reference all numbered paragraphs above.

43. Upon information and belief, Mr. Soliman's inclusion in the Watchlist is based on his religion.

44. The Fifth Amendment to the U.S. Constitution Due Process Clause implicitly guarantees equal protection of its laws. U.S. CONST. amend. VI.[6] Though the "Fifth Amendment . . . does not contain an equal protection clause as does the Fourteenth

---

[5] *Washington v. Glucksberg*, 521 U.S. 702, 767 (1997) (citing *Reno v. Flores*, 507 U.S. 292, 301–302 (1993)).

[6] *See, e.g., Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n.2 (1975) ("[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is so unjustifiable as to be violative of due process. This Court's approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment.") (citations and internal quotation marks omitted).

Amendment which . . . the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." However, as the Supreme Court has recognized "discrimination may be so unjustifiable as to be violative of due process." *Bolling v. Sharpe*, 247 U.S. 497, 499 (1954).

45. In order to prevail on an Equal Protection claim under the Fifth Amendment, plaintiffs must demonstrate that they have been treated differently from a similarly situated person and that the unequal treatment was motivated by intentional discrimination. Then, the court must review this government action under the appropriate level of scrutiny.[7]

46. For constitutional claims, when a statute or other government rule, policy, etc. discriminates against an individual based on a suspect classification, that statute or rule must be subjected to strict or intermediate scrutiny, depending on the classification at issue.[8] Here, religion is a suspect class, which is subjected to strict scrutiny.[9]

47. In order for a government action to withstand a strict scrutiny analysis, the government must show that there is a compelling government interest at stake and that the action taken is narrowly tailored to achieve that interest.

48. Even assuming arguendo that subjecting Mr. Soliman to inclusion on the Watchlist serves a compelling government interest, the current procedures for inclusion and

---

[7] *See, e.g., Muekma Ohlone Tribe v. Salazar*, 813 F. Supp. 2d 170, 196 (D.D.C. 2011) (noting that the "Equal Protection Clause . . . prohibit[s] agencies from treating similarly situated petitioners differently without providing a sufficiently reasoned justification for the disparate treatment") (citing *Settles v. U.S. Parole Comm'n,* 429 F.3d 1098, 1102–03 (D.C. Cir. 2005)).
[8] *Mass. Bd. Of Retirement v. Murgia*, 427 U.S. 307, 319 (1976) ("If a statute invades a "fundamental" right or discriminates against a "suspect" class, it is subject to strict scrutiny.").
[9] *See, e.g., Burlington N. R.R. Co. v. Ford*, 504 U.S. 648, 651 (1992) (observing that the Equal Protection Clause prohibits classification "along suspect lines like race or religion); *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (confirming that the Equal Protection Clause prohibits classifications "drawn upon inherently suspect distinctions such as race, religion, or alienage").

redress are certainly not narrowly tailored, and therefore do not withstand strict scrutiny.

49. For these reasons, Defendants' actions violate Mr. Soliman's right to equal protection under the Fifth Amendment as to his religion.

**Count IV: Violation of Equal Protection Under the Fifth Amendment to the U.S. Constitution Based on Mr. Soliman's National Origin Against Defendants Mayorkas, Wray, and Kable**

50. Plaintiff incorporates by reference all numbered paragraphs above.

51. Discrimination based on national origin warrants strict scrutiny as it is a suspect class.[10]

52. Upon information and belief, Mr. Soliman's inclusion on the Watchlist is based on his national origin.

53. Defendants' treatment of Mr. Soliman based on his national origin does not withstand strict scrutiny, as there are lesser restrictive means to accomplish the compelling government interest; therefore, Defendants' actions are not narrowly tailored.

54. For these reasons, Defendants' actions violate Mr. Soliman's right to equal protection under the Fifth Amendment as to his national origin.

**Count V: Violation of the Administrative Procedure Act by Defendants Mayorkas, Wray, and Kable**

55. Plaintiff reincorporates by reference all numbered paragraphs above.

56. The Administrative Procedure Act ("APA") is a procedural device which allows courts to "compel agency action unlawfully withheld or unreasonably delayed" and to set aside actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §§ 701, 706 *et seq*.

---

[10] *See, e.g.*, *Nicholas v. Riley*, 874 F. Supp. 10, 12 (D.D.C. 1995) (citing *Loving v. Virginia*, 388 U.S. 1, 11 (1967)) ("Strict scrutiny is generally limited to suspect classifications based on immutable characteristics, such as race or national origin.").

57. The relevant agency actions are final, as Plaintiff has exhausted his only available remedy: DHS TRIP.

58. Defendants' policies and practices allow, or fail to prevent, arbitrary and capricious decision making, constituting additional final agency action under the meaning of the APA.

59. Plaintiff has no way of challenging any of these facts.

60. Defendants' actions will continue to impact Mr. Soliman for as long as an unresolved and unexplained FBI flag remains on his record.

61. Plaintiff seeks a declaration that Defendants' policies, practices, and/or customs violate the APA, and should be revised to allow for people like Mr. Soliman who are included in databases a meaningful opportunity to be heard. The failure to comply with DHS TRIP's stated regulations is arbitrary, capricious, and an abuse discretion and, accordingly, unlawful.

**Count VI: Violation of the Privacy Act of 1974 by Defendant Wray and Kable**

62. Plaintiff reincorporates by reference all numbered paragraphs above.

63. Defendants Wray and Kable are liable in their official capacities under the Privacy Act of 1974 because, through their agents, these government agencies made prohibited disclosures.

64. The Privacy Act of 1974 protects "the public from unwanted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used."[11]

---

[11] *Bartel v. F.A.A.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984).

65. According to a Senate report, "the Privacy Act [of 1974] is aimed at 'preventing collection of protected information not immediately needed, about law-abiding Americans, on the off-chance that Government or the particular agency might possibly have to deal with them in the future.'"[12]

66. Under the Privacy Act, an agency may not disclose any record which is contained in a system of records to any person, or to another agency, except pursuant to a written request by the individual, with few exceptions such as if there is a "need to know." 5 U.S.C. § 552a. And, "[t]he Act provides individuals with a means to seek access to and amendment of their records, and sets forth various agency record-keeping requirements."[13]

67. An agency is liable under the Privacy Act if it violates one of the provisions of the Privacy Act willfully or intentionally, and if these violations create an adverse effect on the individual.

68. Here, Defendants willfully and/or intentionally violated the Privacy Act because the disclosure that Mr. Soliman's background check returned an "FBI flag" was made without a need to know. Merely sharing that Mr. Soliman did not clear the background check would have been sufficient.

69. This disclosure is not protected by the Law Enforcement Request exemption, because there was no need to know more than a pass or fail response, and the request was neither made by nor communicated to the head of a law enforcement agency.

---

[12] *Raimondo v. FBI*, No. 13-cv-02295-JSC, 2016 U.S. Dist. LEXIS 61958, *46 (N.D. Cal. May 10, 2016) (quoting *J. Roderick MacArthur Found. V. FBI,* 102 F.3d 600, 604 (quoting Senate Report No. 1183, 93d Cong., 2d Sess. 57 (Sept. 26, 1974))).
[13] *Privacy Act of 1974*, U.S. DEP'T OF JUST. (April 30, 2021), https://www.justice.gov/opcl/privacy-act-1974.

70. Any internal agency policy which may have authorized disclosure of the FBI flag is improper under the Privacy Act because ODOC has no need to know any underlying reason for the failure of a CJIS background check.

71. Due to the improper publication by Defendants, Mr. Soliman suffered actual damages including but not limited to loss of employment opportunities. Publication of this information directly led to the termination of his employment with ODOC.

72. Plaintiff seeks a declaration that the disclosures to ODOC were in violation of the Privacy Act.

**Count VII: Declaratory Relief that Defendants Violated Plaintiff's Rights under the Fifth Amendment Procedural Due Process, Fifth Amendment Substantive Due Process, Fifth Amendment Equal Protection, Administrative Procedure Act, and the Privacy Act of 1974**

73. Plaintiff reincorporates by reference all numbered paragraphs above.

74. Plaintiff is entitled to declaratory relief stating that the respective Defendant or Defendants violated his above-named rights pursuant to 28 U.S.C. §§ 2201–2202.[14]

**Count VIII: Attorneys' Fees under the Equal Access to Justice Act Against all Defendants.**

75. Plaintiff reincorporates by reference all numbered paragraphs above.

76. The Equal Access to Justice Act, as amended 5 U.S.C. § 504 and 28 U.S.C. § 2412, provides for the award of costs and attorneys' fees to a prevailing party in litigation against the United States or one of its agencies.

77. Plaintiff respectfully requests that this Court grant him costs and fees as provided for by the EAJA.

---

[14] Plaintiff recognizes that declaratory relief is a type of relief requested and not a free-standing cause of action; for clarity, however, Plaintiff includes this relief as an enumerated cause of action.

## VII.   JURY DEMAND

78. Plaintiff requests a jury trial on this matter.

## VIII.   PRAYER FOR RELIEF

Plaintiff prays for judgment in his favor and against the Defendants, and respectfully requests that this Court grant the following relief:

1. Issue a declaratory judgment that Defendants violated Plaintiff's right to procedural due process under the Fifth Amendment to the United States Constitution;

2. Issue a declaratory judgment that Defendants violated Plaintiff's right to substantive due process under the Fifth Amendment to the United States Constitution;

3. Issue a declaratory judgment that Defendants Wray and Kable violated the Privacy Act;

4. Issue a declaratory judgment that the actions of Defendants Mayorkas, Wray, and Kable constitute an abuse of discretion and accordingly violate the Administrative Procedure Act;

5. Issue a declaratory judgment that Defendants' policies, practices, and customs violate the Constitution and do not provide Plaintiff and other similarly situated individuals a meaningful opportunity to be heard;

6. Instruct Defendants to revise their procedures and policies regarding DHS TRIP and other means of redress relating to Watchlists;

7. Award Plaintiff damages, including nominal damages;

8. Award attorneys' fees, costs, and expenses as appropriate against all Defendants; and

9. Grant any further relief that the Court deems just and proper.

DATED this 12th day of January, 2022.

*/s/ Christina A. Jump*
**Christina A. Jump**
D.C. ID No. TX151
**Najmu Mohseen**
D.C. ID No. TX0224
Constitutional Law Center for Muslims in America
100 N. Central Expy., Ste. 1010
Richardson, TX 75080
P: (972) 914-2507; F: (972) 692-7454
cjump@clcma.org
nmohseen@clcma.org

## **VERIFICATION OF COMPLAINT**

I, Ayman Soliman, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.



Executed on this  7th  day of   January   , 2022.