UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AYMAN FAREH SOLIMAN, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KRISTI NOEM, ) <br> *in her official capacity as* ) <br> *Secretary of the Department* ) <br> *of Homeland Security, et al.*, ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 22-0079 (ABJ) |

## **MEMORANDUM OPINION & ORDER**

Plaintiff Ayman Soliman brought this suit against defendants Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; Pamela Bondi, in her official capacity as Attorney General of the United States; Kash Patel, in his official capacity as the Director of the Federal Bureau of Investigation ("FBI"); and Michael Glasheen, in his official capacity as the Director of the Terrorist Screening Center.[1]  Am. Compl. [Dkt. # 33].  He posits that his name has been placed in the Terrorist Screening Dataset, and that this has caused an "FBI flag" to appear on his background checks, preventing him from obtaining employment as a chaplain in a state or federal prison.  Am. Compl. ¶¶ 1–3.

On January 12, 2022, plaintiff filed his initial complaint, which consisted of six claims: (1) violation of the right to procedural due process under the Fifth Amendment; (2) violation of the right to substantive due process under the Fifth Amendment; (3) violation of the right to equal

---

1   Defendants Noem, Bondi, Patel, and Glasheen were substituted automatically as defendants in this action pursuant to Federal Rule of Civil Procedure 25(d).

protection under the Fifth Amendment due to his religion; (4) violation of the right to equal protection under the Fifth Amendment due to his national origin; (5) violation of the Administrative Procedure Act, 5 U.S.C. § 701; and (6) violation of the Privacy Act of 1974, 5 U.S.C. § 552a.  Compl. [Dkt # 1] ¶¶ 26–72.

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim, Defs.' First Mot. to Dismiss [Dkt. # 13] ("First Mot."), and the Court granted the motion in part and denied it in part.  Mem. Op. & Order [Dkt. # 31].  It dismissed the substantive due process, equal protection, and APA claims for failure to state a claim, and the Privacy Act claim for lack of jurisdiction.  *Id.* at 2.

As to the procedural due process claim, the Court called for supplemental briefing on subject matter jurisdiction, *see* Order [Dkt. # 25]; Min. Order (Oct. 9, 2024), and it held a hearing to clarify plaintiff's allegations and defendants' position.  Min. Entry (Nov. 22, 2024).  Based on the additional briefing and the matters discussed at the hearing, the Court dismissed Count One without prejudice and granted plaintiff leave to file an amended version of that count.  Mem. Op. & Order at 17–22.  Plaintiff filed the amended complaint on December 20, 2024, alleging a single procedural due process claim.  Am. Compl.

Pending before the Court is defendants' motion to dismiss the amended complaint.  Defs.' Mot. to Dismiss Pl.'s First Am. Compl. [Dkt. # 35] ("Second Mot.").  The motion has been fully briefed.  Pl.'s Resp. in Opp. to Mot. [Dkt. # 36] ("Opp."); Defs.' Reply in Supp. of Mot. [Dkt. # 39] ("Reply").

For the reasons to be set out, the motion to dismiss is **DENIED**.  While this ruling should not be read to express an opinion as to how the lawsuit will turn out, accepting plaintiff's factual allegations as true and resolving all inferences in his favor, there is enough to state a bare-bones

claim and support the initiation of discovery. But inferences and assumptions will not carry the day if the facts remain underdeveloped when the Court is presented with the matter again.

## BACKGROUND

### I. The Terrorist Screening Dataset

The Terrorist Screening Center is a multi-agency center created by the Attorney General, the Secretaries of Homeland Security and State, and the Director of Central Intelligence to manage the Terrorist Screening Dataset ("TSDS"). Overview of the U.S. Gov't's Terrorist Watchlisting Process and Procedures, Ex. 1 to Second Mot. [Dkt. # 35-2] ("Watchlist Procedures") at 1. The TSDS consolidates the biographic and biometric identifying information of all known or suspected terrorists within a single dataset. *Id.* at 2. The TSC maintains the TSDS and provides terrorism screening information to governmental screening and vetting functions. *Id.* at 1.

Departments and agencies of the United States can nominate individuals for inclusion in the TSDS if there is sufficient information to support a "reasonable suspicion" that the individual is a known or suspected terrorist. *Id.* at 3. Nominations with a nexus to international terrorism are provided to the National Counterterrorism Center ("NCTC"), and if the NCIC deems them eligible, they are passed from the NCTC to the Terrorist Screening Center for potential inclusion in the TSDS. *Id.* Nominations "with a nexus to purely domestic terrorism" are submitted by the FBI "directly to the TSC for potential inclusion in the TSDS." *Id.* The Terrorist Screening Center then reviews the information and "will either accept or reject the nomination for inclusion into the TSDS. *Id.* at 4.

The No Fly List and the Selectee List are subsets of the Terrorist Screening Dataset used by the Transportation Security Administration ("TSA") to "secure commercial air travel against the threat of terrorism." *Id.* at 2. Individuals on the No Fly List are prohibited from boarding an

aircraft, and individuals on the Selectee List undergo enhanced screening before boarding an aircraft. *Id.* at 4. Nominations to the No Fly and Selectee List must satisfy additional criteria beyond those required for inclusion in the TSDS, and the TSC is responsible for determining that all required criteria are satisfied. *Id.*

The DHS Traveler Redress Inquiry Program ("DHS TRIP") is a resource for individuals who believe they have been unfairly or incorrectly delayed, denied boarding, or identified for additional screening or inspection at airports or U.S. ports of entry. *Id.* at 7. The program provides travelers seeking "resolution of travel-related screening difficulties. . . with a mechanism to submit any information that they consider relevant for consideration" in order to resolve their travel issues. *Id.*

The Terrorist Screening Center "supports DHS TRIP on inquiries related to data in the TSDS." *Id.* The majority "of travelers who make redress inquiries to DHS TRIP are not a . . . match to a TSDS record," but in cases in which the individual is a match, the TSC will review available information and documentation provided by the traveler, and it will request "any new or exculpatory information" from the nominating agency. *Id.* If a change to a TSDS record is warranted, the TSC ensures the change is "made and verifies that any modifications . . . are carried over" to the systems that receive information from the TSDS. *Id.* at 8.

When the TSC makes a determination regarding the traveler's status on the No Fly List, it provides its recommendation to the TSA Administrator, who issues a final order that maintains or removes the person from the list. *Id.* The TSA Administrator makes final determinations concerning placement on the No Fly List, and if the final order maintains the individual, the Administrator "will notify the person of the ability to seek judicial review pursuant to 49 U.S.C. § 46110." *Id.*

In short, there is an administrative process, subject to judicial review, that offers an avenue to challenge inclusion in those subsets or components of the TSDS that can restrict travel. This suit arises out of the apparent gap in the statutory and regulatory regime that was exposed in connection with the motion to dismiss the original Count One, and it raises the question: is there redress available to a person who has grounds to believe his presence in the TSDS is affecting his liberty or property in other ways?

## II.     Factual Background

The allegations in the amended complaint largely track the original complaint. Plaintiff is a Muslim Imam who accepted an offer of employment from the Oregon Department of Corrections ("ODOC") in February 2021 to serve as a chaplain for inmates. Am. Compl. ¶¶ 11, 14. Plaintiff had to successfully clear a background check as a prerequisite for beginning his position, and on February 4, 2021, ODOC initiated a Law Enforcement Data System ("LEDS")[2] check on him. Am. Compl. ¶ 16. The LEDS check came back with an "FBI flag," and as a result, ODOC rescinded plaintiff's employment offer. Am. Compl. ¶¶ 16, 18.

To determine why he did not clear the background check, plaintiff submitted his fingerprints to the Oregon State Police. Am. Compl. ¶ 19. He alleges that on February 16, 2021, the Oregon State Police reported to ODOC that plaintiff's fingerprints did not match the FBI record

---

2     LEDS is a database within the Department of Oregon State Police that stores "law enforcement records such as warrants, protection orders, stolen property, criminal histories, and other . . . investigative files." *Law Enforcement Data Systems*, Oregon State Police: OSP Programs: Crim. Just. Info. Servs. (CJIS), https://perma.cc/VV6X-DZQL (last visited Mar. 4, 2026). "It provides a criminal justice telecommunications and information system for the State of Oregon, and is the control point for access to similar programs operated by other states and the Federal Government." *Id.* at *Law Enforcement Data Systems: Authority*.

flagged on his LEDS check. Am. Compl. ¶ 20. ODOC then sent plaintiff a letter reinstating his employment offer, which he accepted. Am. Compl. ¶ 21.

ODOC assigned plaintiff to work at the Two Rivers Correctional Institution. Am. Compl. ¶ 21. As part of the onboarding process there, the prison sent plaintiff's fingerprints to the Oregon State Police to obtain a Criminal Justice Information Services ("CJIS")[3] clearance to enter the facility. Am. Compl. ¶ 22. The complaint alleges that on April 7, 2021, Two Rivers received a response from the Oregon State Police denying plaintiff's clearance again based on the FBI flag. Am. Compl. ¶ 23. Plaintiff began teleworking for ODOC as a temporary solution while he attempted to resolve the background check issue, Am. Compl. ¶ 24, but on September 23, 2021, ODOC terminated him to fill the position with someone who could pass the background check to enter the facility. Am. Compl. ¶ 30. Plaintiff alleges that ODOC recommended that he re-apply for the position should he ever clear the FBI flag on his background check. Am. Compl. ¶ 31.

The complaint alleges that the FBI flag appears on plaintiff's background check because his name was placed in the Terrorist Screening Dataset, and it sets out several reasons why plaintiff believes that to be true. Am. Compl. ¶¶ 2–3, 2 n.1. In June 2021, plaintiff initiated a "DHS TRIP Redress" action to determine if he was placed in the TSDS or any subset list. Am. Compl. ¶ 25. On September 24, 2021, the Department of Homeland Security responded by letter:

> DHS TRIP can neither confirm nor deny any information about you which may be within federal watchlists or reveal any law enforcement sensitive information. However, we have made any corrections to records that our inquiries determined were necessary, including, as appropriate, notations that may assist in avoiding incidents of misidentification.

---

3   The Criminal Justice Information Services Division is a component of the FBI that "shares TSDS information with state, local, and tribal governments" primarily through the National Crime Information Center, "which is a computerized database of documented information available to criminal justice agencies nationwide." Second Mot. at 5.

DHS TRIP Letter, Ex. 3 to First Mot. [Dkt. # 13-3] ("Redress Order") at 1.  Plaintiff alleges that the response he received is consistent with those received by individuals who are in the TSDS, but not on the No Fly list.  Am. Compl. ¶ 26.

In addition, plaintiff believes that he appears in the TSDS because while he was permitted to fly, he has experienced issues that may be indicative of that status, such as enhanced security, delays, and the appearance of an "SSSS" (Secondary Security Screening Selection) designation on his boarding passes.  Am. Compl. ¶¶ 33–38, 40.  Plaintiff further alleges that he saw his name on a leaked version of the TSDS that appeared online in early 2023.  Am. Compl. ¶ 46.

Given those circumstances, plaintiff's complaint arises out of the absence of a process for clearing his name.

## STANDARD OF REVIEW

In evaluating a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the Court "must treat the complaint's factual allegations as true and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (internal citation omitted), quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979); *see also Am. Nat'l Ins. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011), quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005).  Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (rule 12(b)(6) case).

### I.     Subject Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Shekoyan*

*v. Sibley Int'l Corp.*, 217 F. Supp. 2d 59, 63 (D.D.C. 2002). Federal courts are courts of limited jurisdiction, and the law "presume[s] that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. EPA*, 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction."). "[B]ecause subject-matter jurisdiction is 'an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003), quoting *Ins. Corp. of Ir. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982).

When considering a motion to dismiss for lack of jurisdiction, unlike when deciding a motion to dismiss under Rule 12(b)(6), the court "is not limited to the allegations of the complaint." *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Jerome Stevens Pharms.*, *Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

## II. Failure to State a Claim

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable

8

to legal conclusions," and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 678–79, citing *Twombly*, 550 U.S. at 555–56.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678, citing *Twombly*, 550 U.S. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. A pleading must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" *id.*, quoting *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, citing *Twombly*, 550 U.S. at 555.

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint "liberally in the plaintiffs' favor," and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler*, 617 F.2d at 608. Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.* In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

## ANALYSIS

The sole claim in the amended complaint alleges that placing plaintiff in the Terrorist Screening Dataset, without any avenue for redress, violates his right to procedural due process. Am. Compl. ¶¶ 66–78.

Defendants move to dismiss the amended complaint on two grounds. They reassert their previous subject matter jurisdiction argument that the Court of Appeals has exclusive jurisdiction over the suit because plaintiff's claim amounts to a challenge to the DHS TRIP process. Second Mot. at 35–40. They also contend that the factual allegations do not state a procedural due process claim. *Id.* at 13–35.

### I. The Court has subject matter jurisdiction over the procedural due process claim.

In its ruling on the first motion to dismiss, the Court explained that it could not resolve the issue of whether it had jurisdiction over the procedural due process claim because it was unclear whether plaintiff was challenging the sufficiency of the DHS TRIP process specifically, or his placement in the TSDS generally. Mem. Op. & Order at 17–22; Nov. 22, 2024 Hr'g Tr. [Dkt. # 32] ("Tr.") at 33–38.

Defendants argued and still maintain that if the claim challenges the sufficiency of the DHS TRIP process, the Court is deprived of jurisdiction under 49 U.S.C. § 46110. That statute authorizes an individual with "a substantial interest in an order issued by the . . . Administrator of the Transportation Security Administration" to seek "review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit." *Id.* § 46110(a). Because DHS TRIP is a redress mechanism maintained by the TSA, defendants contend that only the D.C. Circuit can review challenges to its process. First Mot. at 17–18; Second Mot. at 37–40.

But if the claim challenges plaintiff's placement in the TSDS, defendants now concede that the Court has jurisdiction to hear the case under the D.C. Circuit's ruling in *Abdellatif v. United States Department of Homeland Security*, 109 F.4th 562 (D.C. Cir. 2024). Second Mot. at 36. In *Abdellatif*, the D.C. Circuit held that it could not review a petition challenging an individual's placement on the Selectee List under section 46110 because the statute only authorized it to review TSA orders, and the TSC, not the TSA, was the entity with the authority to remove names from the Selectee List. *Id.* at 567–68, citing *Ege v. U.S. Dep't of Homeland Sec.*, 784 F.3d 791, 795 (D.C. Cir. 2015); *see id.* at 569 ("[N]o matter what we might order TSA to do with respect to DHS TRIP, TSC remains the 'sole entity' that can delist [plaintiff] and remedy [his] concrete injury insofar as it stems from [his] presence on the Selectee List.").

The amended complaint provides the clarity necessary for the Court to find that it has subject matter jurisdiction over plaintiff's procedural due process claim. It states: "[p]laintiff brings this action challenging the lack of due process afforded by Defendants' policies and actions in placing his name in the TSDS, maintaining his name in the TSDS, and the absence of any meaningful opportunity to challenge that action." Am. Compl. ¶ 3. It adds, "Plaintiff . . . does not challenge the DHS TRIP process as a method of redress for his travel-related difficulties, nor does he challenge any specific DHS TRIP final determination letter he received." Am. Compl. ¶ 74. Finally, plaintiff explains that he "challenges the DHS TRIP process only to the extent that the government believes DHS TRIP to be an appropriate remedy for individuals challenging harm outside the travel-related context, and who are able to fly." Am. Compl. ¶ 78. Plaintiff argues that since, like the decision in *Abdellatif*, the decision to maintain him in the TSDS belongs to the Terrorist Screening Center, and not the TSA, section 46110 does not strip the district court of jurisdiction over his claim.

11

Although defendants acknowledge that the amended complaint clarifies the claim and specifically carves out the DHS TRIP process, they argue that the "allegations nonetheless inescapably implicate DHS TRIP" and the Court of Appeals should have exclusive jurisdiction. Second Mot. at 35–36. This is not an accurate characterization of the claim. Plaintiff alleges that his right to procedural due process has been violated because "[n]o mechanism exists for [him] to challenge his presumed inclusion in the TSDS in the absence of travel-related difficulties." Am. Compl. ¶ 76. It is defendants who continue to assert that the DHS TRIP process provides him constitutionally adequate process. Second Mot. at 31–33. Plaintiff's response that DHS TRIP does not cover his employment-related situation is not a challenge to the adequacy of that process; it is an argument that the process does not apply to him in the first place. Thus, the amended complaint does not involve "an order issued by the Secretary of Transportation" that would be covered by section 46110(a), and the Court has subject matter jurisdiction.

## II.     The complaint states a claim for relief under the procedural due process clause.

Under the Fifth Amendment to the United States Constitution, "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. To state a procedural due process claim, plaintiff must allege that: (1) the government deprived him of a "liberty or property interest" to which he had a "legitimate claim of entitlement," and (2) that "the procedures attendant upon that deprivation were constitutionally [in]sufficient." *Roberts v. United States*, 741 F.3d 152, 161 (D.C. Cir. 2014), citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

### A. The amended complaint sufficiently alleges that defendants deprived plaintiff of a liberty interest.

Plaintiff asserts that defendants' actions have deprived him of the right to pursue "his chosen profession," Am. Compl. ¶¶ 66, 75, and that "he maintains both a property interest and a liberty interest in [this right]." Opp. at 5–6.

"For a property interest to be constitutionally protected," plaintiff "must have a legitimate claim of entitlement to it, beyond an abstract need or desire." *Langeman v. Garland*, 88 F.4th 289, 295 (D.C. Cir. 2023), quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (internal quotation marks omitted). A legitimate claim of entitlement is "derived from existing rules or understandings that stem from an independent source such as state law." *Id.* (internal quotation marks omitted). The independent source must place "substantive limitations on official discretion," and contain "explicitly mandatory language" that secure the entitlement. *Id.*, quoting *Wash. Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C. Cir. 1997) and *Tarpeh-Doe v. United States*, 904 F.2d 719, 723 (D.C. Cir. 1990). Plaintiff argues that his employment contract with the Oregon Department of Corrections is the independent source of his property interest, Opp. at 6, but the amended complaint is devoid of any allegations showing how that singular contract or its language created a legitimate entitlement to plaintiff's interest in serving as a prison chaplain generally. Therefore, the complaint fails to state a property interest.

The question of whether the complaint states a cognizable liberty interest is closer. "[T]he right to follow a chosen profession free from unreasonable governmental interference" is a "liberty interest[] protected by the Fifth Amendment." *Campbell v. District of Columbia*, 894 F.3d 281, 288 (D.C. Cir. 2018), quoting *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 538 (D.C. Cir. 2015) (internal quotation marks omitted). An actionable deprivation, though, requires "more than simple defamation or stigma" on the part of the government. *Taylor v. Resol. Trust*

13

*Corp.*, 56 F.3d 1497, 1506 (D.C. Cir. 1995).  "[A] government action that potentially constrains future employment . . . must involve a tangible change in status."  *Kartseva v. Dep't of State*, 37 F.3d 1524, 1527 (D.C. Cir. 1994); *see O'Donnell v. Barry*, 148 F.3d 1126, 1140 (D.C. Cir. 1998) (explaining that plaintiffs must demonstrate "the combination of an adverse employment action and 'a stigma or other disability that foreclosed [the plaintiff's] freedom to take advantage of other employment opportunities'").

The Court of Appeals has identified two methods by which a litigant "may demonstrate [a] tangible change in status."  *Taylor*, 56 F.3d at 1506.  First, the plaintiff can allege that the government's action "formally or automatically excludes" him from employment opportunities. *Kartseva*, 37 F.3d at 1528.  Alternatively, the plaintiff can allege that "the government's action precludes him – whether formally or informally – from such a broad range of opportunities that it interferes with his constitutionally protected right to follow chosen trade or profession."  *Taylor*, 56 F.3d at 1506, quoting *Kartseva*, 37 F.3d at 1529 (internal quotation marks and alteration omitted).  The Court of Appeals also "require[s] that there be some statement of an attempt to obtain subsequent employment and a rejection for the job resulting from the alleged stigma or disability."  *Langeman*, 88 F.4th at 297.

Here, resolving all inferences in favor of plaintiff, the complaint states an actionable deprivation of plaintiff's right to follow his chosen profession.  The amended complaint alleges that plaintiff hopes to work as a chaplain within a prison.  Am. Compl. ¶ 68.  It alleges that, after an initial period employment at Two Rivers Correctional Facility, plaintiff was terminated because the FBI flag allegedly associated with the TSDS operated as a complete bar to his passing the background check and obtaining the necessary clearance to enter the facility.  It further alleges that "[p]resumably, any employment with any state or federal department of corrections will require

[plaintiff] to successfully pass a background check, which he cannot do as long as the FBI flag remains associated with his name." Am. Compl. ¶ 68. Because the allegations state that the effect of defendants' actions in placing plaintiff in the TSDS prevents him from clearing the background check necessary for him to pursue his chosen profession in a correctional facility, the complaint states a deprivation of a liberty interest.

Defendants launch several attacks against the sufficiency of the complaint. First, they argue that the allegations fail to show that plaintiff was "broadly precluded from serving as a prison chaplain" because the complaint includes only one lost chaplaincy position. Second Mot. at 19–20. The D.C. Circuit has stated that "the loss of one position in the profession is insufficient to implicate a Fifth Amendment liberty interest," *Abdelfattah*, 787 F.3d at 539 (internal quotation marks omitted), but the complaint is not asserting that plaintiff merely lost one position, or that he is only entitled to the position with ODOC. The complaint alleges that plaintiff lost his position with ODOC because the FBI flag prevented him from passing a background check, and that he will continue to be precluded from working at a correctional facility because they will all involve the same requirements as in Oregon. Resolving all inferences in plaintiff's favor, this plausibly alleges that he faces a blanket preclusion.

The Court of Appeals came to a similar conclusion to *Kartseva v. Department of State*, 37 F.3d 1524 (D.C. Cir. 1994). Kartseva was a Russian translator working for a private employer on a project for the State Department, and the employer fired her after the Department conducted a background check and determined that she was "ineligible" to work on the project. *Id.* at 1525–26. The only document explaining her ineligibility was an internal memorandum stating that there were "several significant counterintelligence concerns," and after her termination, Kartseva was "unable to find new employment." *Id.* at 1526.

15

Kartseva sued the State Department under the Fifth Amendment alleging that its determination interfered with her ability to obtain future employment. *Id.* The district court dismissed her case for failure to state a claim, but the Court of Appeals reversed. *Id.* at 1525. The Court took note of the "limited record" at that point, but it concluded that Kartseva "alleged facts sufficient to give rise to a possible due process liberty interest which may have been violated by State's action." *Id.* Though it explained that "further findings on the nature and scope of the State disqualification" were necessary to determine whether it "broadly preclude[ed] her from continuing in her chosen career of a Russian translator," *id.* at 1527, it held that her allegations were sufficient to "survive[] a motion to dismiss." *Id.* at 1525. Applying that binding guidance to a set of substantially similar allegations, it would be premature to dismiss the case at this point.[4]

Defendants also argue that plaintiff's chosen career is framed "too narrowly" and that "serving specifically as a prison chaplain is not a protected liberty interest." Second Mot. at 21–24. But the defendants are not serving as plaintiff's guidance counselor. They cite no authority that requires a plaintiff to characterize his career goals broadly, and the cases they rely upon are not comparable. The plaintiff in *Langeman v. Garland*, 88 F.4th 289 (D.C. Cir. 2023), was a former FBI agent who sued the agency after it terminated him for mishandling a high-profile

---

4   In addition, the cases defendants cite to support their argument that plaintiff had to allege multiple lost employment opportunities are not on point. The problem in *Abdelfattah v. United States Department of Homeland Security*, 787 F.3d 524 (D.C. Cir. 2015), was that plaintiff "made no allegations to suggest" that defendant's action "precluded him from working in [his chosen] field" as a software engineer, and that, "at the time he filed his First Amended Complaint, he claimed to still be working as a software engineer." *Id.* at 539. The Supreme Court's decision in *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886 (1961), is also not on point. For one thing, that case was at summary judgment, not a motion to dismiss. *Id.* at 889. But further, the government action alleged in that case was not nearly as broad as the action alleged here. The defendant in *Cafeteria* revoked the identification badge that the plaintiff needed to attend her job at a cafeteria on a military base, *id.* at 887–88; here, defendants have alleged placed plaintiff on a terrorist watch list that reports to agencies nationwide.

investigation. *Id.* at 291. The Court upheld the dismissal of his complaint because he did not allege that the termination affected his employability at all. *See id.* at 297 ("Langeman does not allege that he attempted to obtain employment elsewhere and was rejected because of [the government's] alleged conduct."). The Court of Appeals observed that the complaint lacked allegations to show how the plaintiff was "broadly precluded from pursuing his chosen career or foreclosed from public and private employment in law enforcement," but it did not address the question of whether or when a chosen profession would be too narrow. *Id.* The decision *Garcia v. Pompeo*, Civ. Action No. 18-1822, 2020 WL 134865 (D.D.C. Jan. 13, 2020), was on a motion for summary judgment, not a motion to dismiss, and in that case, the plaintiff's "chosen career" was "far from clear" in the first place. *Id*. at *7.

Finally, defendants argue that the allegations do not show that they deprived plaintiff of his right to pursue his chosen profession because it was ODOC that ultimately terminated him because of the FBI flag. Second Mot. at 24–28. But the same was true of the plaintiff in *Kartseva*, whose private employer terminated her "[b]ased on State's communication" that she was ineligible to work on a government project. 37 F.3d at 1526. The defendants here cannot credibly contend that the complaint does not implicate them when plaintiff alleges that ODOC terminated him because the FBI flag caused him to fail the background check and it "recommended that [he] re-apply should he ever clear the FBI flag." Am. Compl. ¶ 31. And the background clearance failure that led to his termination was allegedly conducted through the Criminal Justice Information Services, Am. Compl. ¶¶ 22–23, which, according to defendants, is a division of the FBI that "shares TSDS information with state . . . governments." Second Mot. at 5.

At this stage of proceedings, the allegations have plausibly stated that defendants deprived plaintiff of his liberty interest in pursuing his chosen profession, and what remains is the sufficiency of his allegations concerning due process.

### A. The complaint has alleged constitutionally inadequate process.

The "fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citation and quotation marks omitted). The Supreme Court has stated, though, that due process is a "flexible" concept that "calls for such procedural protections as the particular situation demands." *Id.* at 334 (internal citation and quotation marks omitted). Thus, to assess what kind of process is due, the Court has laid out three factors to consider: (1) the nature of the private interest that will be affected by the official action; (2) the risk of erroneous deprivation of such an interest through the procedures used; and (3) the government's interest, including any burdens that additional or alternative procedural requirements would entail. *Id.* at 335.

Plaintiff alleges that he has no avenue whatsoever to "challenge the non-travel-related repercussions" of the addition of his name to the Terrorist Screening Dataset, and that he is entitled to a "legal mechanism" that gives him "a meaningful opportunity to contest" the listing. Am. Compl. ¶¶ 72, 75. Defendants assert that the existing procedures, including the DHS TRIP process, are enough to protect his constitutional rights, and that his interest in serving as a prison chaplain is outweighed by the "government['s] interest in preventing terrorist attacks against commercial aviation." Second Mot. at 30–31. That is something of a non-sequitur since this case does not involve aviation, and if it did, plaintiff would have access to *some* process and judicial review.

At this stage in litigation, the Court cannot find based on the face of the complaint that plaintiff received constitutionally adequate process as a matter of law.  The nature of plaintiff's interest is significant, as the allegations state that he has been broadly precluded from working in his chosen profession as a prison chaplain due to the presence of the FBI flag in his background check.  And it is not clear that the DHS TRIP process affords him any relief, let alone constitutionally adequate relief.  DHS TRIP was created by the Department of Homeland Security to fulfill Congress's mandate to "establish a timely and fair process for individuals who believe they have been delayed or prohibited from boarding a commercial aircraft because they were wrongly identified as a threat."  49 U.S.C. § 44926(a); *see Abdellatif*, 109 F.4th at 566 (describing the origin of DHS TRIP).  And the end product of the process is a final order from the TSA Administrator that removes or maintains the individual on the No Fly list.  Watchlist Procedures at 9 n.5.  That procedure does not align with the facts of this case or the prayer for relief, since plaintiff can fly and "does not believe himself to be on the No Fly List," Am. Compl. ¶ 73, and he has sued the Terrorist Screening Center and the Federal Bureau of Investigations to challenge his inclusion on the TSDS, which is outside the purview of DHS TRIP or the TSA.

The government asserts that DHS TRIP is an adequate means of process because "those who can access DHS TRIP" by alleging travel related problems "can use the redress process to provide any documentation and potentially exculpatory information they believe would be helpful to seek redress and the correction of any applicable TSDS records."  Second Mot. at 32.  But the fact that plaintiff may receive some incidental review as a result of accessing DHS TRIP means very little when the process is only meant to relieve the travel-related difficulties that result from placement on the No Fly List.  And it is not clear that there is any other opportunity for redress available for someone like plaintiff, since to date, the government has refused to respond directly

19

to the question of whether there is any administrative remedy available for a person who believes they are in the TSDS, but because of employment, not travel-related difficulties. *See* Defs.' Resp. [Dkt. # 28] at 2–3; *see also* Tr. at 19:23–20:3 ("THE COURT: Can you think hypothetically for a minute about a person who's flying around the country happily and applies for a job and gets a flag, what are they supposed to do?  MR. DESTA: In that hypothetical, you cannot apply to DHS TRIP.").[5]

The Court appreciates the importance of the government's interests in national security and the prevention of terrorism. But on its face, the complaint states a plausible claim under the procedural due process clause.

## CONCLUSION

For all the reasons stated above, defendants' motion to dismiss the amended complaint [Dkt. # 35] is **DENIED**.

AMY BERMAN JACKSON
United States District Judge

DATE:  March 6, 2026

---

5   Defendants largely rely on *Elhady v. Kable*, 993 F.3d 208 (4th Cir. 2021), for their argument that plaintiff received constitutionally adequate process. Second Mot. at 29–30. But the *Elhady* court rested its decision to grant summary judgment in favor of the government on the fact that, after discovery, the plaintiffs failed to produce evidence showing that their liberty interests were infringed, and it did not reach the process question. *Elhady*, 993 F.3d at 220–28; *see id.* at 228 ("Because we conclude that plaintiffs have not demonstrated infringements of constitutional liberty interests under the Due Process Clause, we need not address plaintiffs' claims as to the adequacy of existing processes."). The court did comment in dicta on the adequacy of the process afforded to the plaintiffs in that case, but it did not reach a decision on the matter and its balancing of the *Mathews* factors was affected by the fact that it had already ruled there was no liberty interest involved. *Id.* at 228–29.